1  DAVID B. DEMO (SBN 153997);ddemo@plawp.com
   JENNY J. CHU (SBN 223077); jchu@plawp.com
2  LHB PACIFIC LAW PARTNERS, LLP
   5858 Horton Street, Suite 370
3  Emeryville, CA 94608
   Tel: (510) 841-7777
4  Fax: (510) 841-7776

5  Attorneys for Plaintiff
   THE BURLINGTON INSURANCE COMPANY

6

7                IN THE UNITED STATES DISTRICT COURT

8          FOR THE NORTHERN DISTRICT OF CALIFORNIA          **MHP**

9

10 THE BURLINGTON INSURANCE
   COMPANY,                                    Case No. **10      0315**

11                                             **CV**
            Plaintiff,

12                                             **COMPLAINT FOR FRAUD, NEGLIGENT**
       v.                                      **MISREPRESENTATION, BROKER**
13                                             **NEGLIGENCE, VIOLATION OF THE**
   BB&T INSURANCE SERVICES OF                  **CALIFORNIA UNFAIR COMPETITION**
14 CALIFORNIA, INC., an entity of unknown      **LAW, EQUITABLE INDEMNITY &**
   form, individually, and doing business as,  **RICO**
15 and/or as successor in interest to, JOHN
   BURNHAM INSURANCE SERVICES,
16 BB&T-JOHN BURNHAM INSURANCE
   SERVICES and/or JOHN BURNHAM &
17 COMPANY; BB&T-JOHN BURNHAM                   **E-filing**
   INSURANCE SERVICES, an entity of
18 unknown form, individually, and doing
   business as, and/or as successor in interest to,
19 JOHN BURNHAM INSURANCE SERVICES
   and/or JOHN BURNHAM & COMPANY;              **JURY TRIAL DEMANDED**
20 MASOUD SHAHRI, an individual; JOHN
   BURNHAM INSURANCE SERVICES, an
21 entity of unknown form; JOHN BURNHAM
   & COMPANY, an entity of unknown form;
22 and DOES 1 THROUGH 10, inclusive,

23            Defendants.

24       Plaintiff The Burlington Insurance Company ("TBIC") complains and alleges as to

25 against defendant BB&T Insurance Services of California, Inc., individually, doing business as,

26 and/or as successor in interest to, John Burnham Insurance Services, BB&T-John Burnham

27 Insurance Services and/or John Burnham & Company; defendant BB&T-John Burnham

28 Insurance Services, individually, doing business as, and/or as successor in interest to, John

LHB Pacific Law Partners, LLP
5858 Horton Street, Ste. 370
Emeryville, CA 94608
(510) 841-7777 Fax (510) 841-7776

1  Burnham Insurance Services and/or John Burnham & Company; defendant John Burnham

2  Insurance Services; defendant John Burnham & Company (all of aforementioned defendants are

3  individually and collectively hereinafter referred to as "BB&T"); defendant Masoud Shahri

4  (hereinafter referred to as "Shahri"); defendant Does 1-10 as follows:

## JURISDICTION

6  1.     This Court has subject matter jurisdiction over this matter pursuant to 28 USC

7  section 1331, as this suit alleges a federal question (RICO, 18 USC section 1961, et seq.) and

8  therefore arises under federal law.

9  2.     The jurisdiction of this Court over the subject matter of this action is also

10  predicated on 28 USC section 1332. The parties are diverse, and the amount in controversy

11  exceeds $75,000, exclusive of interest and costs.

## VENUE

13  3.     Venue is proper in this district because, having offices and doing business in the

14  counties of Alameda and San Francisco, defendant BB&T resides in the Northern District of

15  California. 18 USC § 1965(a); 28 USC § 1391(b)(1), (c).

## GENERAL ALLEGATIONS

17  4.     Plaintiff TBIC is, and all times herein mentioned was, a corporation incorporated

18  in the State of North Carolina, with its principal place of business in the State of North Carolina,

19  and qualified to do business in the State of California.

20  5.     Defendant BB&T Insurance Services of California, Inc. is, and/or all relevant

21  times herein mentioned was, a corporation incorporated in the State of California and/or an entity

22  of unknown form, with its principal place of business in the State of California.

23  6.     Defendant BB&T-John Burnham Insurance Services of California, Inc. is, and/or

24  all relevant times herein mentioned was, a corporation incorporated in the State of California

25  and/or an entity of unknown form, with its principal place of business in the State of California.

26  7.     Defendant John Burnham Insurance Services is, and/or all relevant times herein

27  mentioned was, a corporation incorporated in the State of California and/or an entity of unknown

28  form, with its principal place of business in the State of California.

LHB Pacific Law Partners, LLP
5858 Horton Street, Ste. 370
Emeryville, CA 94608
(510) 841-7777 Fax (510) 841-7776

TBIC Complaint

1    8.    Defendant John Burnham & Company is, and/or all relevant times herein

2   mentioned was, a corporation incorporated in the State of California and/or an entity of unknown

3   form, with its principal place of business in the State of California.

4    9.    TBIC is informed and believes that, in or about 2002, defendant BB&T Insurance

5   Services of California, Inc. and/or Defendant BB&T-John Burnham Insurance Services of

6   California, Inc. purchased and/or otherwise acquired the entities formerly known as "John

7   Burnham and Company" and/or "John Burnham Insurance Services" and/or that BB&T

8   Insurance Services of California, Inc. is successor in interest to, and/or assumed the liabilities of,

9   "John Burnham and Company" and/or "John Burnham Insurance Services," and/or that BB&T

10   Insurance Services of California, Inc. is otherwise legally responsible for the liabilities of "John

11   Burnham and Company" and/or "John Burnham Insurance Services" in connection with the

12   matters referred to herein.

13    10.    TBIC is informed and believes that defendant Shahri is, and at all times

14   mentioned herein was, a citizen and resident of the State of California.

15    11.    The true names or capacities, whether individual, governmental, corporate, or

16   otherwise, of Does 1 through 10, inclusive, are presently unknown to TBIC, who therefore sued

17   said defendants by such fictitious names. TBIC is informed and believes that, based on the

18   allegations set forth below, Does 1 through 10 are legally responsible in some manner for the

19   events herein alleged and are liable to TBIC for indemnity, subrogation, and/or contribution.

20    12.    At all times mentioned herein, each of the defendants was the agent, servant,

21   and/or employee of each of the other defendants, and each was acting within the course and

22   scope of such agency, service, and/or employment.

23    13.    TBIC has pled matters in this Complaint on information and belief because the

24   necessary information lies within the control of either defendants or third parties.

25                          **FACTUAL BACKGROUND**

26    14.    At all relevant times, the entities known as Administrative Services Cooperative,

27   Inc. ("ASCI"), Taxi Services, Inc. ("Taxi Services"), Long Beach Yellow Cab Co-operative, Inc.

28   ("Long Beach Yellow Cab"), Taxi Systems, Inc. ("Taxi Systems"), and Van Ness Management,

LHB Pacific Law Partners, LLP
5858 Horton Street, Ste. 370
Emeryville, CA 94608
(510) 841-7777 Fax (510) 841-7776

1   Inc. ("Van Ness Management") (collectively referred to herein as "Taxi Companies") provided

2   taxi services in Long Beach, California.

3       15.     At all relevant times, all of the Taxi Companies were managed, controlled, and/or

4   owned by William Rouse and/or members of his family (collectively referred to herein as

5   "Rouse").

6       16.     At all relevant times, BB&T was an insurance brokerage agency. BB&T had no

7   direct contractual relationship with TBIC, and had no authority to bind and/or speak on behalf of

8   TBIC.

9       17.     At all relevant times, Shahri, and Does 1 through 5, were employed by BB&T

10  Insurance Services of California, Inc. (and/or its predecessors in interest John Burnham

11  Insurance Services and/or John Burnham & Company). Shahri and Does 1 through 5 had no

12  direct contractual relationship with TBIC, and had no authority to bind and/or speak on behalf of

13  TBIC.

14      18.     In May 2006, Rouse authorized Shahri, BB&T, and/or Does 1 through 10 to act as

15  insurance brokers for the Rouse companies (including all of the Taxi Companies). As such,

16  Shahri and/or BB&T negotiated with TBIC about purchasing an insurance policy from TBIC for

17  the Rouse taxicab companies. TBIC advised Shahri and/or BB&T that, based on the information

18  provided by Shahri and/or BB&T, TBIC would only agree to insure ASCI. At that time, TBIC

19  explicitly declined to insure any of the other Rouse entities. Shahri, BB&T, and/or Does 1

20  through 10 advised TBIC that ASCI would purchase a liability policy under those terms.

21      19.     Based on Shahri and/or BB&T's representations, TBIC issued a one-year

22  commercial general liability insurance policy to "Administrative Services Co-op Taxi Services,

23  Inc.", effective from June 1, 2006, to June 1, 2007 (Policy No. HGL0012980) ("Policy"). (See

24  Exhibit A.)

25      20.     TBIC is informed and believes that Ramon Chavez ("Chavez") was an

26  independent contractor hired by one or more of the Taxi Companies as a taxi driver.

27      21.     On or about August 10, 2007, "M.H." ("Underlying Plaintiff") – a dependent

28  adult who had used one or more of the Taxi Companies' cab services – sued Chavez and each of

LHB Pacific Law Partners, LLP
5858 Horton Street, Ste. 370
Emeryville, CA 94608
(510) 841-7777 Fax (510) 841-7776

1 the Taxi Companies in a suit styled *M.H. v. Chavez, et al.* (Los Angeles Superior Court Case No.
2 BC375716) (hereinafter referred to as the "Underlying Action"). The Underlying Plaintiff
3 alleged that she was repeatedly falsely imprisoned, sexually assaulted, and battered by Chavez
4 over the course of several years, in the course and scope of his employment as a driver for Taxi
5 Companies. Her complaint included allegations that Taxi Companies: failed to abide by her
6 requests that they send another driver; negligently and recklessly hired Chavez; failed to properly
7 monitor Chavez; violated the duty of care owed to dependent adults; and falsely advertised and
8 made misleading statements about their services. That complaint requested special and general
9 damages, punitive and exemplary damages, attorneys' fees and costs, and equitable relief.

10 22. At the time of the incidents alleged by the Underlying Plaintiff, Chavez worked
11 pursuant to a written "Taxicab Lease Agreement" with Taxi Systems, and drove a van bearing
12 the signage "Long Beach Yellow Cab." Title for this van was held by an entity called Long
13 Beach Transit, who leased the van to Taxi Systems. Taxi Systems then leased the van to Chavez.
14 Chavez was not employed by nor had any other direct contractual relationship with either ASCI
15 or Taxi Services.

16 23. Each of the Taxi Companies tendered defense of the Underlying Action to TBIC.
17 TBIC provided a defense to ASCI under a reservation of rights. Due to a lack of clarity in the
18 application for the insurance Policy submitted by BB&T, it was unclear whether Taxi Services
19 was intended to be a named insured under the Policy; as a result, TBIC therefore also provided a
20 defense to Taxi Services under a reservation of rights. TBIC disputed that Long Beach Yellow
21 Cab, Taxi Systems, and Van Ness Management were insureds under the Policy.

22 24. In support of their claim that all of the Taxi Companies were TBIC insureds,
23 Rouse produced documents showing that BB&T and Shahri, Rouse's insurance brokers, had
24 represented that all Taxi Companies were covered by the Policy. These documents included
25 numerous certificates of insurance dated May 30, 2006, issued by Shahri and/or BB&T,
26 representing that all of the Rouse family taxicab entities (including all of the Taxi Companies)
27 were named insureds under the Policy. These May 30, 2006 certificates were issued by Shahri
28 / / /

LHB Pacific Law Partners, LLP
5858 Horton Street, Ste. 370
Emeryville, CA 94608
(510) 841-7777 Fax (510) 841-7776

5

TBIC Complaint

1  and/or BB&T without TBIC's consent, without TBIC's knowledge, and despite TBIC's prior

2  refusal to insure all of the Rouse family taxicab entities.

3      25.    Shahri and/or BB&T also provided Rouse with a completed City of Los Angeles

4  form, on which Shahri wrote that: 1) he had "binding authority" for TBIC; and 2) he was TBIC's

5  "Senior Vice President." In fact, Shahri was and had never been an officer or employee of

6  TBIC. Moreover, neither Shahri, BB&T, nor Does 1 through 10 had authority to bind or act on

7  behalf of TBIC.

8      26.    Rouse claimed that Taxi Companies relied on these documents, provided to them

9  by Shahri and/or BB&T, to their detriment. Rouse also claimed that, as these documents showed

10  that BB&T and Shahri had (albeit wrongfully) held themselves out as agents of TBIC, TBIC was

11  bound by BB&T and Shahri's representations.

12      27.    During the course of the Underlying Action it became clear that neither Taxi

13  Services nor ASCI were liable to the Underlying Plaintiff arising out of the underlying incidents.

14      28.    The parties in the Underlying Action ultimately reached a settlement. Although

15  TBIC disputed that the Policy insured Long Beach Yellow Cab, Taxi Systems, and Van Ness

16  Management, and despite Taxi Services and ASCI's lack of liability, TBIC contributed $460,000

17  to the total $620,000 settlement on the Taxi Companies' behalves.

18      29.    TBIC also paid over $10,000 in attorneys fees and costs, to defend Taxi

19  Companies, and over $37,700 in coverage counsel attorneys fees, as a result of Shahri and

20  BB&T's false representations.

21  **FIRST CAUSE OF ACTION**

22  **(FRAUD – Against All Defendants)**

23      30.    TBIC realleges and incorporates herein by reference each and every allegation

24  contained in paragraphs 1-29.

25      31.    TBIC is informed and believes that BB&T, Shahri, and/or Does 1 through 10

26  wrongfully and intentionally created the afore-described documents and/or made the afore-

27  described untruthful statements in order to induce Taxi Companies to believe that each of the

28  Taxi Companies were insured by TBIC under the Policy. TBIC is informed and believes that

LHB Pacific Law Partners, LLP
5858 Horton Street, Ste. 370
Emeryville, CA 94608
(510) 841-7777 Fax (510) 841-7776

1 Taxi Companies did rely on such documents and statements in that they did not seek or obtain
2 insurance coverage elsewhere.

3         32.     Although BB&T, Shahri, and/or Does 1 through 10 knew that Rouse was seeking
4 insurance coverage for all of the Taxi Companies, BB&T, Shahri, and/or Does 1 through 10
5 wrongfully and intentionally made untruthful statements to TBIC, in order to induce TBIC to
6 believe that Rouse had agreed to purchase an insurance policy for only ASCI. In reliance on
7 these material misrepresentations, TBIC underwrote, issued, and priced a policy for ASCI only.

8         33.     TBIC is informed and believes that BB&T, Shahri, and/or Does 1 through 10
9 intended that TBIC rely on BB&T, Shahri, and/or Does 1 through 10's representations to TBIC
10 in connection with the brokering, sale, and/or issuance of the Policy, in order to induce TBIC to
11 issue at least one policy of insurance to one of the Rouse companies. TBIC did rely on these
12 representations in that it in fact issued the Policy to "Administrative Services Co-op Taxi
13 Services, Inc."

14         34.     TBIC is informed and believes that, in creating the documents described above
15 and by leading TBIC to believe that that they were only negotiating a policy for ASCI, BB&T,
16 Shahri, and/or Does 1 through 10 intended to deceive TBIC and induce TBIC's reliance.

17         35.     TBIC's reliance on BB&T, Shahri, and/or Does 1 through 10's misrepresentations
18 were justifiable. TBIC had no reason to suspect the falsity of BB&T, Shahri, and/or Does 1
19 through 10's statements, and did not otherwise know that such statements were false.

20         36.     TBIC alleges that, as a proximate result of BB&T, Shahri, and/or Does 1 through
21 10's intentional misrepresentations to TBIC and to Taxi Companies as herein alleged, TBIC
22 became obligated to provide Taxi Services, Long Beach Yellow Cab, Taxi Systems, and Van
23 Ness Management with defense and indemnity benefits under the Policy, to which those entities
24 were not otherwise entitled.

25         37.     As a proximate result of BB&T, Shahri, and/or Does 1 through 10's wrongful acts
26 as herein alleged, TBIC incurred damages including but not limited to: the $460,000 indemnity
27 payment made by TBIC on the Taxi Companies' behalves in the Underlying Action; attorneys
28 fees and costs paid by TBIC on Taxi Services, Long Beach Yellow Cab, Taxi Systems, and Van

LHB Pacific Law Partners, LLP
5858 Horton Street, Ste. 370
Emeryville, CA 94608
(510) 841-7777 Fax (510) 841-7776

1  Ness Management's behalves in connection with the Underlying Action; and attorneys fees paid
2  to TBIC's own coverage counsel to investigate and respond to Taxi Companies' claims of
3  coverage under the Policy.

4      38.    BB&T, Shahri, and/or Does 1 through 10's conduct was oppressive, fraudulent,
5  and/or malicious, and justifies the imposition of punitive damages.

## SECOND CAUSE OF ACTION

## (NEGLIGENT MISREPRESENTATION – Against All Defendants)

8      39.    TBIC realleges and incorporates herein by reference each and every allegation
9  contained in paragraphs 1-38.

10      40.    BB&T, Shahri, and/or Does 1 through 10 negligently and carelessly created the
11  above-described documents and/or made the above-described untruthful statements in order to
12  induce Taxi Companies to believe that each of the Taxi Companies were insured by TBIC under
13  the Policy. TBIC is informed and believes that Taxi Companies did rely on such documents and
14  statements in that they did not seek or obtain insurance coverage elsewhere.

15      41.    BB&T, Shahri, and/or Does 1 through 10 negligently and carelessly made the
16  above-described untruthful statements to TBIC, in order to induce TBIC to believe that Rouse
17  had agreed to purchase an insurance policy for only ASCI. In reliance on these material
18  misrepresentations, TBIC underwrote, issued, and priced a policy for ASCI only.

19      42.    TBIC is informed and believes that BB&T, Shahri, and/or Does 1 through 10
20  intended that TBIC rely on BB&T, Shahri, and/or Does 1 through 10's representations to TBIC
21  in connection with the brokering, sale, and/or issuance of the Policy, in order to induce TBIC to
22  issue at least one policy of insurance to one of the Rouse companies. TBIC did rely on these
23  representations in that it in fact issued the Policy to "Administrative Services Co-op Taxi
24  Services, Inc."

25      43.    TBIC is informed and believes that BB&T, Shahri, and/or Does 1 through 10
26  made the above-described false statements of material fact with no reasonable grounds for
27  making them.

28  /// 

LHB Pacific Law Partners, LLP
5858 Horton Street, Ste. 370
Emeryville, CA 94608
(510) 841-7777 Fax (510) 841-7776

TBIC Complaint

1 44. TBIC's reliance on BB&T, Shahri, and/or Does 1 through 10's misrepresentations

2 were reasonable. TBIC had no reason to suspect the falsity of BB&T, Shahri, and/or Does 1

3 through 10's statements, and did not otherwise know that such statements were false.

4 45. TBIC alleges that, as a proximate result of BB&T, Shahri, and/or Does 1 through

5 10's intentional misrepresentations to TBIC and to Taxi Companies as herein alleged, TBIC

6 became obligated to provide Taxi Services, Long Beach Yellow Cab, Taxi Systems, and Van

7 Ness Management with defense and indemnity benefits under the Policy, to which those entities

8 were not otherwise entitled.

9 46. As a proximate result of BB&T, Shahri, and/or Does 1 through 10's wrongful acts

10 as herein alleged, TBIC incurred damages including but not limited to: the $460,000 indemnity

11 payment made by TBIC on the Taxi Companies' behalves in the Underlying Action; attorneys

12 fees and costs paid by TBIC on Taxi Services, Long Beach Yellow Cab, Taxi Systems, and Van

13 Ness Management's behalves in connection with the Underlying Action; and attorneys fees paid

14 to TBIC's own coverage counsel to investigate and respond to Taxi Companies' claims of

15 coverage under the Policy.

16        **THIRD CAUSE OF ACTION**

17    **(BROKER NEGLIGENCE – Against All Defendants)**

18 47. TBIC realleges and incorporates herein by reference each and every allegation

19 contained in paragraphs 1-46.

20 48. BB&T, Shahri, and/or Does 1 through 10 owed a duty to TBIC to properly

21 prepare and process Taxi Companies' application for insurance in an honest, truthful, and

22 accurate manner, by fully divulging in good faith to TBIC all facts within their knowledge

23 material to the insurance contract.

24 49. BB&T, Shahri, and/or Does 1 through 10 owed a duty not to defraud TBIC.

25 50. BB&T, Shahri, and/or Does 1 through 10 carelessly and negligently made

26 untruthful statements to TBIC, in order to induce TBIC to believe that BB&T, Shahri, and/or

27 Does 1 through 10 had agreed to purchase an insurance policy for only ASCI. In reliance on

28 these material misrepresentations, TBIC underwrote, issued, and priced a policy for ASCI only.

LHB Pacific Law Partners, LLP
5858 Horton Street, Ste. 370
Emeryville, CA 94608
(510) 841-7777 Fax (510) 841-7776

TBIC Complaint

51.     TBIC's reliance on BB&T, Shahri, and/or Does 1 through 10's misrepresentations were justifiable. TBIC had no reason to suspect the falsity of BB&T, Shahri, and/or Does 1 through 10's statements, and did not otherwise know that such statements were false.

52.     TBIC alleges that, as a proximate result of BB&T, Shahri, and/or Does 1 through 10's misrepresentations to TBIC and to Taxi Companies as herein alleged, TBIC became obligated to provide Taxi Services, Long Beach Yellow Cab, Taxi Systems, and Van Ness Management with defense and indemnity benefits under the Policy, to which those entities were not otherwise entitled.

53.     As a proximate result of BB&T, Shahri, and/or Does 1 through 10's wrongful acts as herein alleged, TBIC incurred damages including but not limited to: the $460,000 indemnity payment made by TBIC on the Taxi Companies' behalves in the Underlying Action; attorneys fees and costs paid by TBIC on Taxi Services, Long Beach Yellow Cab, Taxi Systems, and Van Ness Management's behalves in connection with the Underlying Action; and attorneys fees paid to TBIC's own coverage counsel to investigate and respond to Taxi Companies' claims of coverage under the Policy.

## FOURTH CAUSE OF ACTION

### (VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW (CA B&P § 17200, et seq.) – Against All Defendants)

54.     TBIC realleges and incorporates herein by reference each and every allegation contained in paragraphs 1-53.

55.     BB&T, Shahri, and/or Does 1 through 10 engaged in unfair, unlawful, and/or fraudulent businesses activities, which included, but are not limited to: BB&T, Shahri, and/or Does 1 through 10's intentional misrepresentation to TBIC that Rouse was only purchasing insurance for ASCI; BB&T, Shahri, and/or Does 1 through 10's intentional misrepresentation to Rouse that all of the Taxi Companies were covered by the Policy; BB&T and Shahri's creation and provision to Rouse of at least sixty-five (65) fraudulent certificates of insurance showing all of the Rouse family enterprises (including all of the Taxi Companies) as named insureds under the Policy; BB&T and/or Shahri's completion and provision to Rouse of a City of Los Angeles

1 form, in which Shahri fraudulently claimed to be a TBIC officer with binding authority over
2 TBIC.

3 56. These actions constitute unfair business methods and practices, and were
4 committed with the intent, design, and purpose to: deprive TBIC of the opportunity to properly
5 consider, underwrite, and issue insurance policies to Taxi Companies; and to illegally increase
6 the profits of BB&T, Shahri, and/or Does 1 through 10.

7 57. TBIC alleges that, as a result of BB&T, Shahri, and/or Does 1 through 10's
8 intentional misrepresentations to TBIC and to Taxi Companies as herein alleged, TBIC suffered
9 actual injury and loss of property. TBIC became obligated to provide Taxi Services, Long Beach
10 Yellow Cab, Taxi Systems, and Van Ness Management with defense and indemnity benefits
11 under the Policy, to which those entities were not otherwise entitled.

12 58. TBIC is informed and believes that BB&T, Shahri, and/or Does 1 through 10 are
13 continuing to engage in the types of unlawful practices alleged above.

14 59. TBIC therefore request an injunction pursuant to Cal. Bus. and Prof. Code section
15 17200, et seq., against BB&T, Shahri, and/or Does 1 through 10, enjoining them from engaging
16 in the type of unlawful conduct and acts alleged herein. TBIC also requests an injunction
17 requiring BB&T, Shahri, and/or Does 1 through 10, to: 1) provide TBIC with a list of all other
18 BB&T customers for whom BB&T, Shahri, and/or Does 1 through 10 have negotiated and/or
19 purchased TBIC insurance policies; 2) provide TBIC with any documents (including but not
20 limited to any certificates of insurance) or files that BB&T, Shahri, and/or Does 1 through 10
21 may have created, issued, maintained, and/or disseminated relating those policies; and 3) contact
22 those customers who have purchased TBIC insurance policies through BB&T, providing
23 appropriate notification so as to allow a review and re-evaluation of such customers' insurance
24 coverage.

25 60. TBIC also requests that the Court order any other equitable relief deemed
26 necessary.

27 / / /

28 / / /

LHB Pacific Law Partners, LLP
5858 Horton Street, Ste. 370
Emeryville, CA 94608
(510) 841-7777 Fax (510) 841-7776

1    61.    Moreover, because this action will result in the enforcement of an important right

2    affecting the public interest, TBIC requests an award of reasonable attorneys fees as private

3    attorney generals, as authorized by statute.

## FIFTH CAUSE OF ACTION

## (EQUITABLE INDEMNITY – Against All Defendants)

6    62.    TBIC realleges and incorporates herein by reference each and every allegation

7    contained in paragraphs 1-61.

8    63.    TBIC denies that it was in any way primarily liable for Taxi Services, Long

9    Beach Yellow Cab, Taxi Systems, and Van Ness Management's liabilities arising from the

10   Underlying Action. TBIC was forced to contribute $460,000 to the settlement of the Underlying

11   Action as a result of BB&T, Shahri, and/or Does 1 through 10's wrongful acts, as described

12   herein.

13   64.    TBIC denies that it was in any way primarily liable for Taxi Services, Long

14   Beach Yellow Cab, Taxi Systems, and Van Ness Management's defense expenses. TBIC was

15   forced to incur such expenses as a result of BB&T, Shahri, and/or Does 1 through 10's wrongful

16   acts, as described herein.

17   65.    TBIC has been damaged as a legal result of the acts and omissions of BB&T,

18   Shahri, and/or Does 1 through 10, as herein alleged and in an amount equal to the total sum that

19   TBIC has paid defend Taxi Services, Long Beach Yellow Cab, Taxi Systems, and Van Ness

20   Management in the Underlying Action and/or to indemnify Taxi Services, Long Beach Yellow

21   Cab, Taxi Systems, and Van Ness Management for their liability arising from the Underlying

22   Action.

23   66.    TBIC further contends that it is entitled to total or partial equitable indemnity

24   from BB&T, Shahri, and/or Does 1 through 10 for any and all payments made to any person

25   and/or entity to defend Taxi Services, Long Beach Yellow Cab, Taxi Systems, and Van Ness

26   Management in the Underlying Action, or to indemnify Taxi Services, Long Beach Yellow Cab,

27   Taxi Systems, and Van Ness Management for liability arising out of the Underlying Action.

28   / / /

LHB Pacific Law Partners, LLP
5858 Horton Street, Ste. 370
Emeryville, CA 94608
(510) 841-7777 Fax (510) 841-7776

1    67.    TBIC's claim to equitable indemnity from defendants is based on equitable
2    considerations outlined in the law.

3                                    **SIXTH CAUSE OF ACTION**

4                **(RICO (18 USC § 1961, et seq.) – Against All Defendants)**

5    68.    TBIC realleges and incorporates herein by reference each and every allegation
6    contained in paragraphs 1-67.

7    69.    BB&T is an enterprise affecting interstate commerce, in that it is an insurance
8    brokerage that negotiates with and affects the purchase of insurance policies from numerous
9    insurers in different states. BB&T is an ongoing organization with a framework for making
10   decisions, functions as a continuing unit, and has an ascertainable structure guiding its brokerage
11   operations.

12   70.    Shahri and/or Does 1 through 10 are associated with and/or employed by BB&T,
13   and participated in the conduct of the affairs of that enterprise.

14   71.    BB&T, Shahri, and/or Does 1 through 10 participated in a pattern of racketeering,
15   which including, but is not limited to, the following predicate acts: BB&T, Shahri, and/or Does 1
16   through 10 intentionally misrepresented to TBIC that Rouse was only purchasing insurance for
17   ASCI; BB&T, Shahri, and/or Does 1 through 10 intentionally misrepresented to Rouse that all of
18   the Taxi Companies were covered by the Policy; BB&T and Shahri created and provided to
19   Rouse at least sixty-five (65) fraudulent certificates of insurance showing all of the Rouse family
20   enterprises (including all of the Taxi Companies) as named insureds under the Policy; BB&T
21   and/or Shahri completed and provided to Rouse a City of Los Angeles form, in which Shahri
22   fraudulently claimed to be a TBIC officer with binding authority over TBIC.

23   72.    TBIC alleges that, as a result of BB&T, Shahri, and/or Does 1 through 10's
24   intentional misrepresentations to TBIC and to Taxi Companies as herein alleged, TBIC suffered
25   actual injury to its business or property. TBIC became obligated to provide Taxi Services, Long
26   Beach Yellow Cab, Taxi Systems, and Van Ness Management with defense and indemnity
27   benefits under the Policy, to which those entities were not otherwise entitled.

28   ///

LHB Pacific Law Partners, LLP
5858 Horton Street, Ste. 370
Emeryville, CA 94608
(510) 841-7777 Fax (510) 841-7776

13                                                                        TBIC Complaint

1  73.  As a result of BB&T, Shahri, and/or Does 1 through 10's wrongful acts as herein

2  alleged, TBIC incurred damages including but not limited to: the $460,000 indemnity payment

3  made by TBIC on the Taxi Companies' behalves in the Underlying Action; attorneys fees and

4  costs paid by TBIC on Taxi Services, Long Beach Yellow Cab, Taxi Systems, and Van Ness

5  Management's behalves in connection with the Underlying Action; and attorneys fees paid to

6  TBIC's own counsel to investigate and respond to Taxi Companies' claims of coverage under the

7  Policy.

8  74.  In addition, as a result of BB&T, Shahri, and/or Does 1 through 10's wrongful

9  acts as herein alleged, TBIC is entitled to an award of treble damages, and TBIC is entitled to

10  recover its own attorneys' fees incurred in bringing this action.

11  75.  BB&T, Shahri, and/or Does 1 through 10's conduct was oppressive, fraudulent,

12  and/or malicious, and justifies the imposition of punitive damages.

13  WHEREFORE, TBIC prays for judgment, decree, and order against defendants BB&T,

14  Shahri, and Does 1 through 10 as follows:

15  1.  For compensatory damages according to proof at trial (as to the First, Second,

16  Third, and Sixth causes of action);

17  2.  For general damages according to proof at trial (as to the First, Second, Third, and

18  Sixth causes of action);

19  3.  For treble TBIC's compensatory and general damages (as to the Sixth cause of

20  action);

21  4.  For an injunction enjoining BB&T, Shahri, and/or Does 1 through 10 from

22  engaging in the type of unlawful conduct and acts alleged above (as to the Fourth

23  cause of action);

24  5.  For an an injunction requiring BB&T, Shahri, and/or Does 1 through 10, to: 1)

25  provide TBIC with a list of all other BB&T customers for whom BB&T, Shahri,

26  and/or Does 1 through 10 have negotiated and/or purchased TBIC insurance

27  policies; 2) provide TBIC with any documents (including but not limited to any

28  certificates of insurance) or files that BB&T, Shahri, and/or Does 1 through 10

TBIC Complaint

1  may have created, issued, maintained, and/or disseminated relating those policies;

2  and 3) contact those customers who have purchased TBIC insurance policies

3  through BB&T, providing appropriate notification so as to allow a review and re-

4  evaluation of such customers' insurance coverage (as to the Fourth cause of

5  action);

6.  For judgment against BB&T, Shahri, and Does 1 through 10, declaring that they
    are under a duty to pay TBIC in full, or in part, the amount of any payment for
    defense costs and/or indemnification made by TBIC on Taxi Services, Long
    Beach Yellow Cab, Taxi Systems, and Van Ness Management's behalves, to any
    party, arising from the Underlying Action (as to the Fifth cause of action);

7.  For punitive damages (as to the First and Sixth causes of action);

8.  For attorneys' fees and costs incurred by TBIC in this Action;

9.  For pre-judgment interest

10. For cost of suit incurred herein; and

11. For such other and further relief as the court deems just and proper.

DATED: January 21, 2010                    LHB PACIFIC LAW PARTNERS, LLP

                                           DAVID B.A. DEMO and JENNY J. CHU
                                           Attorneys for Plaintiff
                                           THE BURLINGTON INSURANCE COMPANY

**DEMAND FOR JURY TRIAL**

The Burlington Insurance Company hereby demands a jury trial.

DATED: January 21, 2010                    LHB PACIFIC LAW PARTNERS, LLP

                                           DAVID B.A. DEMO and JENNY J. CHU
                                           Attorneys for Plaintiff
                                           THE BURLINGTON INSURANCE COMPANY

LHB Pacific Law Partners, LLP
5858 Horton Street, Ste. 370
Emeryville, CA 94608
(510) 841-7777 Fax (510) 841-7776

TBIC Complaint

15

# INSURANCE POLICY

of

# The Burlington Insurance Company

A Stock Company

Home Office and Claim Office:
238 International Road
Burlington, North Carolina 27215
Tel. 336-586-2500 or
Toll Free 1-877-434-2667



IFG Companies®

IFG-I-0002 0304

Page 1 of 2

EXHIBIT **A**

This policy consists of:

- Declarations
- Common Policy Conditions
- Applicable common amendatory endorsements or exclusions
- One or More coverage parts. A coverage part consists of:
  - o One or more coverage forms
  - o Applicable forms and endorsements

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representatives.

Secretary

President

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1982, 1983

POLICY NUMBER: HGL0012980

POLICY PERIOD:      06/01/2006             06/01/2007
                       Effective Date            Expiration Date

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LISTING OF FORMS AND ENDORSEMENTS

This listing forms a part of the following:

## Commercial General Liability Policy

**NUMBER**             **TITLE**

### Interline

IFG-I-0101 02 04 Common Policy Declarations (TBIC)
IFG-I-0931 11 00 Important Notice - CA
IFG-I-0402 11 00 Service of Suit Amendment
IFG-I-0169 11 05 Excl - Violation of Statutes
IL 00 03 07 02 Calculation of Premium
IL 00 17 11 98 Common Policy Conditions
IL 00 21 07 02 Nuclear Energy Liability Exclusion

### Commercial General Liability

IFG-G-0002-DL 05 03 General Liability Declarations
CG 00 01 10 01 General Liab. Coverage Form
CG 21 35 10 01 Exclusion - Coverage C - Med Pay
CG 21 44 07 98 Designated Premises Or Project
IFG-G-0052 11 01 Deductible Liability Insurance
IFG-G-0055 06 01 Addl Insured - O,L,C
BG-G-005 07 04 Exclusion - Punitive Damages
BG-G-007 02 05 Exclusion - Asbestos, Silica
BG-G-119 08 02 Definition - Employee
CG 00 62 12 02 War Liability Exclusion
CG 21 36 01 96 Exclusion - New Entities
CG 21 39 10 93 Contractual Liab. Limitation
CG 21 47 07 98 Employment Practices Liability
CG 21 49 09 99 Total Pollution Exclusion
CG 21 67 04 02 Fungi or Bacteria Exclusion
CG 21 75 12 02 Exclusion of Terrorism
GSG-G-010 0399 Addl Insured - By Contract
GSG-G-015 0100 Professional Liability Exclusion

IFG-I-0150 03 03                                         Page 1 of 2

POLICY NUMBER: HGL0012980

POLICY PERIOD: 06/01/2006 06/01/2007
Effective Date Expiration Date

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LISTING OF FORMS AND ENDORSEMENTS

This listing forms a part of the following:

### Commercial General Liability Policy

**NUMBER**   **TITLE**

GSG-G-016 02 04 Excl - Aircraft, et.al.
GSG-G-017 01 00 Cross Liability Exclusion
GSG-G-021 04 00 Excl - Intellectual Properties
IFG-G-0039 05 01 Minimum Premium
IFG-G-0060 01 03 Amendment - Exclusion g.

**Cover Page**
IFG-I-0002 03 04 Policy Cover Page (TBIC)

IFG-I-0150 03 03                                          Page 2 of 2



**IFG Companies®**

## COMMON POLICY DECLARATIONS

**Policy Number** HGL0012980

**Renewal of:** NEW

## THE BURLINGTON INSURANCE COMPANY

Home Office: Burlington, North Carolina

Administrative Office: 100 Pearl Street, Hartford, CT 06103

Claims Office: 238 International Road, Burlington, NC 27215

| **Item 1.** Named Insured and Mailing Address | Co. Use:KLB |
|---|---|

Administrative Services Co-op Taxi Services, Inc.

2129 W. Rosecrans Avenue
Gardena, CA 90249

CRC Insurance Services, Inc.

105 W Adams St, 18th Floor
Chicago, IL 60603

Code:0350

| **Item 2.** Policy Period | Effective Date: 06/01/06 Expiration Date: 06/01/07 at 12:01 A.M., Standard Time at your mailing address shown above. |
|---|---|

**Item 3.** In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy. This policy consists of the following coverage parts for which a premium is indicated. Where no premium is shown, there is no coverage.

| Coverage Part(s) | Premium |
|---|---|
| Commercial General Liability | $ 31,500 |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| **Total Policy Premium or Deposit Premium** | $ 31,500 |
| **Other Charges (if applicable)** **Total Other Charges** | $ |
| **Total Amount Due*** | $ 31,500 |

*Premium is: _X_ Flat ___ Auditable    Policy Minimum Premium    $ 31,500

In the event you cancel this policy, we will retain a minimum premium. See IFG-G-0039.

**Item 4.** Forms and Endorsements applicable to this policy: See "Listing of Forms and Endorsements" (IFG-I-0150)

**Item 5.** Form of Business.     ___ Individual          ___ Partnership          ___ Joint Venture
          ___ Limited Liability Company     _X_ Other Organization, Including a Corporation
          ___ Trust

Business Description: Taxi Company

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.

Countersigned:

Date: _____     By: _____

Issue Date: 08/01/2006                        Authorized Representative

IFG-I-0101 0204                    Insured Copy                    Page 1 of 1

## IMPORTANT POLICYHOLDER INFORMATION
### (CALIFORNIA)

1. THE INSURANCE POLICY THAT YOU HAVE PURCHASED IS BEING ISSUED BY AN INSURER THAT IS NOT LICENSED BY THE STATE OF CALIFORNIA. THESE COMPANIES ARE CALLED "NONADMITTED" OR "SURPLUS LINE" INSURERS.

2. THE INSURANCE COMPANY IS NOT SUBJECT TO THE FINANCIAL SOLVENCY REGULATION AND ENFORCEMENT WHICH APPLIES TO CALIFORNIA LICENSED INSURERS.

3. THE INSURER DOES NOT PARTICIPATE IN ANY OF THE INSURANCE GUARANTEE FUNDS CREATED BY CALIFORNIA LAW. THEREFORE, THESE FUNDS WILL NOT PAY YOUR CLAIMS OR PROTECT YOUR ASSETS IF THE INSURER BECOMES INSOLVENT AND IS UNABLE TO MAKE PAYMENTS AS PROMISED.

4. CALIFORNIA MAINTAINS A LIST OF ELIGIBLE SURPLUS LINES INSURERS APPROVED BY THE INSURANCE COMMISSIONER. ASK YOUR AGENT OR BROKER IF THE INSURER IS ON THAT LIST.

5. FOR ADDITIONAL INFORMATION ABOUT THE INSURER, YOU SHOULD ASK QUESTIONS OF YOUR INSURANCE AGENT, BROKER, OR "SURPLUS LINE" BROKER OR CONTACT THE CALIFORNIA DEPARTMENT OF INSURANCE AT THE FOLLOWING TOLL-FREE TELEPHONE NUMBER: 1-800-927-4357.

D-2 FORM (1/1999)

IFG-I-0931 1100                                                            Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SERVICE OF SUIT AMENDMENT

Pursuant to any statute of any state, territory or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the Statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, "suit" or proceeding instituted by or on behalf of the insured or any beneficiary hereunder rising out of this contract of insurance, and hereby designate the above named person as the person to whom the said officer is authorized to mail process or a true copy thereof.

It is further agreed that service of process in such "suit" may be made upon the President, or his nominee, of the Company at 238 International Road, Burlington, North Carolina 27215 and that in any "suit" instituted against any of them upon this policy, the Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

It is agreed that in any state requiring a standard form of policy, insurance hereunder on values or properties in such state shall attach and cover in accordance with the terms and conditions of such standard form.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE LIABILITY COVERAGE PART
COMMECIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL UMBRELLA LIABILITY COVERAGE PART
FARM LIABILITY COVERAGE PART
FOLLOWING FORM EXCESS LIABILITY COVERAGE PART
GARAGE LIABILITY COVERAGE PART
MOTOR CARRIER LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS AND COMPLETED OPERATIONS LIABILITY COVERAGE PART
TRUCKERS LIABILITY COVERAGE PART

**A.** The following exclusion is added:

This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

Contains copyright material with permission, ISO Properties, Inc., 2004

IL 00 03 07 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998 □

IL 00 21 07 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

**(Broad Form)**

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

© ISO Properties, Inc., 2001

2. As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

    © ISO Properties, Inc., 2001    IL 00 21 07 02    □

**Policy Number:** HGL0012980

# COMMERCIAL GENERAL LIABILITY DECLARATIONS

**Named Insured:** Administrative Services Co-op Taxi Services, Inc.          **Effective Date:** 06/01/2006

| Item 1. | LIMITS OF INSURANCE |
|---|---|

| | |
|---|---|
| $ 2,000,000 | General Aggregate Limit (Other Than Products-Completed Operations) |
| $ Incl. in General Aggregate | Products-Completed Operations Aggregate Limit |
| $ 1,000,000 | Personal and Advertising Injury Limit |
| $ 1,000,000 | Each Occurrence Limit |
| $ 50,000 | Damage To Premises Rented To You Limit (Any One Premises) |
| $ Excluded | Medical Expense Limit (Any One Person) |

Refer to individual policy forms and/or endorsements for various coverage sublimits, if applicable.

| Item 2. | AUDIT PERIOD (If Applicable) |
|---|---|

☐ Annually          ☐ Semi-Annually          ☐ Quarterly          ☐ Monthly

| Item 3. | FORM(S) AND ENDORSEMENT(S) made a part of this policy at time of issue: |
|---|---|

See Listing of Forms and Endorsements (IFG-I-0150)

| Item 4. | COMPOSITE RATE |
|---|---|

☐ If box is checked, see Composite Rate Endorsement (IFG-I-0152) for applicable classification, rates and premiums. If box is not checked, see page 2 of these Declarations for applicable classifications, rates and premiums.

| Item 5. | RETROACTIVE DATE (CG 00 02 only) |
|---|---|

Coverage A of this Insurance does not apply to "bodily injury" or "property damage" which occurs before the Retroactive Date, if any, shown here: None          (Enter Date or "None" if no Retroactive Date applies.)

| Item. 6 | PREMIUMS |
|---|---|

| | |
|---|---|
| $ 31,500 | Total Coverage Part Advance Premium |
| $ 31,500 | Coverage Part Minimum Premium (if applicable) |

These Declarations are part of the Policy Declarations containing the name of the Insured and the policy period.

**Policy Number:** HGL0012980

# COMMERCIAL GENERAL LIABILITY
## SCHEDULE OF CLASSIFICATIONS AND RATES

| Named Insured: Administrative Services Co-op Taxi Services, Inc. | Effective Date: 06/01/2006 |
|---|---|

| Loc. No.<br>1<br><br>Bldg. No. | Location Address (Premises you own, rent or occupy):<br>2129 W. Rosecrans Avenue<br>Gardena, CA 90249 | County, Borough or Parish | Rating Terr.<br><br>003 |
|---|---|---|---|

| Code No.<br>68001 | Classification<br>Taxicab Companies<br><br>Products-completed operations are subject to the General Aggregate Limit for this class. | | |
|---|---|---|---|

| Premium is:<br>☐ Adjustable (See Premium Audit Conditions)<br>☒ Flat (Not Adjustable)<br>☐ Fully Earned When Written<br>☒ Minimum Premium | Premium Base | | All Other | Prod.-C. Ops |
|---|---|---|---|---|
| | 34,000 | Rate Per : 1,000 | $926.47029 | Included |
| | Area in Sq.Ft. (a) | Advance Premium: | $31,500 | Included |

IFG-G-0002-DL 0503

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

  **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

  **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

  No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

  **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

  **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

  **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

  **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

  **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

  **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

 © ISO Properties, Inc., 2000

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

### k. Damage To Your Product

"Property damage" to "your product" arising out of it or any part of it.

### l. Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

### m. Damage To Impaired Property Or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

### n. Recall Of Products, Work Or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

### o. Personal And Advertising Injury

"Bodily injury" arising out of "personal and advertising injury".

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance ; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

 © ISO Properties, Inc., 2000

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of websites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

© ISO Properties, Inc., 2000 **CG 00 01 10 01** □

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

## COVERAGE C MEDICAL PAYMENTS

**1. Insuring Agreement**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while taking part in athletics.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage A.

**h. War**

Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

© ISO Properties, Inc., 2000

CG 00 01 10 01 □

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      (1) "Bodily injury" or "personal and advertising injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by,

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

         you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

   b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

© ISO Properties, Inc., 2000

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

© ISO Properties, Inc., 2000

**b.** If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c. **Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

5. **Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

6. **Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

7. **Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

8. **Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9. **When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

© ISO Properties, Inc., 2000

**CG 00 01 10 01**     □

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

   c. All other parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in a. above;

      (2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

      (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

      (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

         (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

         (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

      (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

© ISO Properties, Inc., 2000

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      (1) Power cranes, shovels, loaders, diggers or drills; or

      (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      (2) Cherry pickers and similar devices used to raise or lower workers;

   f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

      However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

      (1) Equipment designed primarily for:

         (a) Snow removal;

         (b) Road maintenance, but not construction or resurfacing; or

         (c) Street cleaning;

      (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

      (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

   f. The use of another's advertising idea in your "advertisement"; or

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

© ISO Properties, Inc., 2000           □

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

  **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    **(1)** Products that are still in your physical possession; or

    **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

      **(a)** When all of the work called for in your contract has been completed.

      **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

      **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

  **b.** Does not include "bodily injury" or "property damage" arising out of:

    **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

    **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

    **(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

  **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

  **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

  **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

  **a.** Means:

    **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

      **(a)** You;

      **(b)** Others trading under your name; or

      **(c)** A person or organization whose business or assets you have acquired; and

    **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    **(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

    **a.** Means:

        **(1)** Work or operations performed by you or on your behalf; and

        **(2)** Materials, parts or equipment furnished in connection with such work or operations.

    **b.** Includes

        **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

        **(2)** The providing of or failure to provide warnings or instructions.

© ISO Properties, Inc., 2000

**CG 00 01 10 01**     ☐

POLICY NUMBER: HGL0012980

**COMMERCIAL GENERAL LIABILITY**
**CG 21 35 10 01**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – COVERAGE C – MEDICAL PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| **Description And Location Of Premises Or Classification:** |
|---|
| All premises you own, rent or occupy and all of your operations. |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any premises or classification shown in the Schedule:

**1.** Section **I** – Coverage **C** – Medical Payments does not apply and none of the references to it in the Coverage Part apply; and

**2.** The following is added to Section **I** – Supplementary Payments:

**h.** Expenses incurred by the insured for first aid administered to others at the time of an accident for "bodily injury" to which this insurance applies.

CG 21 35 10 01

© ISO Properties, Inc., 2000

**Page 1 of 1**

POLICY NUMBER: HGL0012980

**COMMERCIAL GENERAL LIABILITY**
**CG 21 44 07 98**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| |
|---|
| **Premises:** Each location covered by this policy and described in the Declarations. |
| **Project:** |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of:

1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or
2. The project shown in the Schedule.

Copyright, Insurance Services Office, Inc., 1997

POLICY NUMBER: HGL0012980

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DEDUCTIBLE LIABILITY INSURANCE
## DEDUCTIBLE APPLIES TO DAMAGES, DEFENSE COSTS AND SUPPLEMENTARY PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

| | SCHEDULE | | |
| --- | --- | --- | --- |
| **Coverage** | **Amount and Basis of Deductible** | | |
| | **PER CLAIM** | **or** | **PER OCCURRENCE OR OFFENSE** |
| Bodily Injury Liability<br>OR | $ | | $ |
| Property Damage Liability<br>OR | $ | | $ |
| Bodily Injury Liability and/or<br>Property Damage Liability Combined<br>OR | $ | | $ |
| Personal and Advertising Injury Liability<br>OR | $ | | $ |
| Bodily Injury Liability,<br>Property Damage Liability and/or Personal and<br>Advertising Injury Liability Combined | $ 5,000 | | $ |
| **Aggregate Deductible amount:** | $ 20,000 | | |
| | (No aggregate deductible applies if left blank.) | | |

APPLICATION OF ENDORSEMENT (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all applicable coverages, however caused):

$20,000 Per Claim- Assault & Battery

**A.** Our obligation under the Bodily Injury Liability, Property Damage Liability and Personal and Advertising Injury Liability Coverages to pay:

1. Damages on your behalf;

2. Defense Costs; and

3. Supplementary Payments

applies only to the amount in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

Our obligation to pay applies only to the difference between the deductible amounts shown above (less any amounts paid for Defense Costs or Supplementary Payments within the deductible amount, if applicable), and the limits of insurance stated in the policy.

**B.** You may select a deductible amount on either a per claim or a per "occurrence" or offense basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. Subject to paragraph **D.** below, the deductible amount stated in the Schedule above applies as follows:

1. **PER CLAIM BASIS.** If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury"; and, all Defense Costs or Supplementary Payments incurred by the company as a result

IFG-G-0052 1101         Contains copyright material with permission,         Page 1 of 3
Insurance Services Office, Inc. 1994

a. of a claim brought by any one person because of "bodily injury".

b. Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; and, all Defense Costs or Supplementary Payments incurred by the company as a result of a claim brought by any one person because of "property damage".

c. Under Personal and Advertising Injury Liability Coverage, to all damages sustained by any one person or organization because of "personal and advertising injury"; and, all Defense Costs or Supplementary Payments incurred by the company as a result of a claim brought by any one person because of "personal and advertising injury".

d. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person, and Defense Costs or Supplementary Payments incurred by the company as a result of a claim brought by any one person because of:

(1) "Bodily injury";

(2) "Property damage"; or

(3) "Bodily injury" and "property damage" combined

e. Under Bodily Injury Liability, Property Damage Liability and/or Personal and Advertising Injury Liability Coverage Combined, to all damages sustained by any one person, and Defense Costs or Supplementary Payments incurred by the company as a result of a claim brought by any one person because of:

(1) "Bodily injury";

(2) "Property damage"; or

(3) "Personal and Advertising Injury";

(4) "Bodily Injury", "property damage" and "personal and advertising injury" combined

as the result of any one "occurrence".

If damages are claimed for care, loss of services or death resulting at any one

time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

With respect to "property damage" and "personal and advertising injury", person includes an organization.

2. **PER OCCURRENCE BASIS.** If the deductible amount indicated in the schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

a. Under Bodily Injury Liability Coverage, to all damages because of "bodily injury"; and, all Defense Costs or Supplementary Payments incurred by the company as a result of "bodily injury".

b. Under Property Damage Liability Coverage, to all damages because of "property damage"; and, all Defense Costs or Supplementary Payments incurred by the company as a result of "property damage".

c. Under Personal and Advertising Injury Liability Coverage, to all damages because of "personal and advertising injury"; and, all Defense Costs or Supplementary Payments incurred by the company as a result of "personal and advertising injury".

d. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages, and Defense Costs or Supplementary Payments incurred by the company because of:

(1) "Bodily injury";

(2) "Property damage"; or

(3) "Bodily injury" and "property damage" combined

e. Under Bodily Injury Liability, Property Damage Liability and/or Personal and Advertising Injury Liability Coverage Combined, to all damages, and Defense Costs or Supplementary Payments incurred by the company because of:

(1) "Bodily injury";

(2) "Property damage"; or

(3) "Personal and Advertising Injury";

 Contains copyright material with permission, Insurance Services Office, Inc. 1994

    (4)    "Bodily injury", "property damage" and "personal and advertising injury" combined

as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

C.    The Deductible amount applies to damages, Defense Costs and Supplementary Payments combined for any one Occurrence, Offense or Claim (whichever applies per paragraph **B.** above). The Deductible will be applied first to the payment of damages and then to the payment of Defense Costs and Supplementary Payments.

D.    If an Aggregate Deductible amount is shown in the Schedule above, the total deductible amount you must pay during the policy period shall not exceed the amount of the Aggregate Deductible shown.

E.    The terms of this insurance, including those with respect to:

1.    Our right and duty to defend the insured against any "suits" seeking those damages,

2.    Your duties in the event of an "occurrence", claim, or "suit" apply irrespective of the application of the deductible amount.

F.    We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

G.    **DEFENSE COSTS DEFINITION – COVERAGES A AND B.**

For the purposes of this endorsement, Defense Costs includes attorney fees, court costs, interest and all other costs incurred by the company in the handling, investigation, and adjustment of claims or "suits" against the insured, even when no payment is made to the claimant, or when this insurance does not apply.

Contains copyright material with permission, Insurance Services Office, Inc. 1994

POLICY NUMBER: HGL0012980

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## Schedule

**Name of Person or Organization:**
Any person or organization with whom you have agreed, in a written contract, that such person or organization should be added as an additional insured on your policy, provided such written contract is fully executed prior to an "occurrence" in which coverage is sought under this policy.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" for that insured by or for you.

It is agreed that such insurance as is afforded by this policy for the benefit of the Additional Insured shall be primary insurance, and any other insurance maintained by the Additional Insured shall be excess and non-contributory, but only as respects any claim, loss or liability arising out of the operations of the Named Insured, and only if such claim, loss or liability is determined to be solely due to the negligence or responsibility of the Named Insured.

IFG-G-0055 0601

Contains copyright material with permission,
Insurance Services Office, Inc. 1996

Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – PUNITIVE DAMAGES

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**

This insurance does not apply to any claim of or indemnification for punitive or exemplary damages. If a "suit" seeking both compensatory and punitive or exemplary damages has been brought against you for a claim covered by this policy, we will provide defense for such action. We will not have any obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages.

**BG-G-005 0704**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ASBESTOS, SILICA DUST, TOXIC SUBSTANCE

This endorsement modifies insurance under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**COMMERCIAL LIABILITY UMBRELLA COVERAGE**
**FOLLOWING FORM EXCESS LIABILITY COVERAGE**
**OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**

This insurance does not apply to "bodily injury" or "personal and advertising injury" caused by asbestosis, silicosis, mesothelioma, emphysema, pneumoconiosis, pulmonary fibrosis, pleuritis, endothelioma or any lung disease or any ailment caused by, or aggravated by exposure, inhalation, consumption or absorption of asbestos fibers or dust or silica dust.

This insurance does not apply to any "property damage" due to or arising out of the actual or alleged presence of asbestos or silica dust in any form, including the costs of remedial investigations or feasibility studies, or to the costs of testing, monitoring, cleaning or removal of any property or substance.

BG-G-007 02 05

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DEFINITION - EMPLOYEE

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

Definition 5. "Employee" (SECTION V) is replaced by the following:

5.  "Employee" means a person working for salary or wages, or any substitute for salary or wages, as compensation in any manner by any insured, under any contract of hire, express or implied, oral or written, where the insured, as employer, has the power or right to control and direct the employee.  "Employee" includes a person hired by the hour, day or any other irregular or intermittent period.  "Employee" includes a "leased worker" or "temporary worker".

BG-G-119 0802

COMMERCIAL GENERAL LIABILITY
CG 00 62 12 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **i.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war; or

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**WAR**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**a.** War, including undeclared or civil war; or

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**C.** Exclusion **h.** under Paragraph **2., Exclusions** of **Section I – Coverage C – Medical Payments** does not apply. Medical payments due to war are now subject to Exclusion **g.** of Paragraph **2., Exclusions** of **Section I – Coverage C – Medical Payments** since "bodily injury" arising out of war is now excluded under Coverage A.

 © ISO Properties, Inc., 2002

COMMERCIAL GENERAL LIABILITY
CG 21 36 01 96

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – NEW ENTITIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph 4. of WHO IS AN INSURED (Section II) does not apply.

Copyright, Insurance Services Office, Inc., 1994

COMMERCIAL GENERAL LIABILITY
CG 21 39 10 93

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONTRACTUAL LIABILITY LIMITATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The definition of "insured contract" in the DEFINI-TIONS Section is replaced by the following:

"Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement.

COMMERCIAL GENERAL LIABILITY
CG 21 47 07 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

(1) A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employment; or

    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

(1) A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employment; or

    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Copyright, Insurance Services Office, Inc., 1997 □

COMMERCIAL GENERAL LIABILITY
CG 21 49 09 99

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

f. **Pollution**

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

 Copyright, Insurance Services Office, Inc., 1998

COMMERCIAL GENERAL LIABILITY
CG 21 67 04 02

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2.**, Exclusions of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

**B.** The following exclusion is added to Paragraph **2.**, Exclusions of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

© ISO Properties, Inc., 2001             □

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM AND OTHER ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism" or an "other act of terrorism". However, with respect to an "other act of terrorism", this exclusion applies only when one or more of the following are attributed to such act:

1. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

2. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   **a.** Physical injury that involves a substantial risk of death; or

   **b.** Protracted and obvious physical disfigurement; or

   **c.** Protracted loss of or impairment of the function of a bodily member or organ; or

3. The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

4. The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

5. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs **1.** and **2.** describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

**B.** The following definitions are added:

1. For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

   **a.** The act resulted in aggregate losses in excess of $5 million; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**3.** "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002. Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**C.** In the event of any incident of a "certified act of terrorism" or an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ADDITIONAL INSUREDS BY CONTRACT, AGREEMENT OR PERMIT**

This endorsement modified insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

1. SECTION II - WHO IS AN INSURED is amended to include as an insured any person or organization with whom you agreed, because of a written contract, written agreement or permit, to provide insurance such as is afforded under this Coverage Part, but only with respect to your operations, "your work" or facilities owned or used by you.

2. This provision does not apply:

   a. Unless the written contract, agreement or permit has been issued prior to the "bodily injury", "property damage", "personal injury" or "advertising injury".

   b. To any person or organization included as an insured by an endorsement issued by us and made part of this Coverage Part.

   c. To any lessor of equipment:

      (1) After the equipment lease expires; or

      (2) If the "bodily injury", "property damage", "personal injury" or "advertising injury" arises out of the sole negligence of the lessor.

   d. To any engineer, architect or surveyor if the "bodily injury", "property damage", "personal injury" or "advertising injury" arises out of the rendering or failure to render professional services by or for you, including:

      (1) The preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; and

      (2) Supervisory, inspection or engineering services.

   e. To any:

      (1) Owners or other interests from whom land has been leased; or

      (2) Managers or lessors of premises if:

         (a) The occurrence takes place after you cease to be a tenant in that premises; or

         (b) The "bodily injury", "property damage", "personal injury" or "advertising injury" arises out of structural alterations, new construction or demolition operations performed by or on behalf of the manager or lessor.

   f. To any person or organization included as an insured under Paragraph 4. Newly Acquired or Formed Organizations of Section II - Who Is An Insured.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

GSG-G-010 0399

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSION – PROFESSIONAL LIABILITY**

This endorsement modified insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury", "property damage", "personal injury", or "advertising injury" arising out of:

1. the rendering of: or

2. failure to render;

any professional services by or for you.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

GSG-G-015 0100

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION – AIRCRAFT PRODUCTS AND GROUNDING

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury" or "property damage" included within the "products-completed operations hazard" and arising out of any "aircraft product" or the "grounding" of any aircraft.

As respects this endorsement, the following definitions are added:

**"Aircraft product"** means:

1. Aircraft (including missile or spacecraft, and any ground support or control equipment used therewith); and

2. Any article furnished by the insured and installed in an aircraft or used in connection with an aircraft, or for spare parts for an aircraft, including ground handling tools and equipment; and

3. Any of "your products" used at an airport for the purpose of guidance, navigation or direction of aircraft; and

4. Training aids, manuals, blueprints, engineering or other data or advice, and services and labor relating to such aircraft, articles or products.

**"Grounding"** means the withdrawal of one or more aircraft from flight operations or the imposition of speed, passenger or load restrictions on such aircraft, by reason of the existence of or alleged or suspected existence of any defect, fault or condition in such aircraft or any part therefore sold, handled or distributed by the insured or manufactured, assembled or processed by any other person or organization according to specifications, plans, suggestions, orders, or drawings of the insured or with tools, machinery or other equipment furnished to such persons or organizations by the insured, whether such aircraft so withdrawn are owned or operated by the same or different persons, organizations or corporations.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

GSG-G-016 0204

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## EXCLUSION – CROSS LIABILITY

This endorsement modified insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to any actual or alleged "bodily injury", "property damage", "personal injury" or "advertising injury" to:

1. Any business enterprise in which any insured owns an interest, is a partner, or which is a parent, affiliate, subsidiary or sister company of any insured;

2. Any business enterprise directly or indirectly controlled, operated or managed by a business enterprise described in **1** above;

3. A present, former, future or prospective partner, officer, director, stockholder or employee of any insured;

4. Any insured; or

5. The spouse, child, parent or sibling of any of the above as a consequence of **1,2,3,** or **4** above.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

GSG-G-017 0100

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - INTELLECTUAL PROPERTY

This endorsement modified insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This insurance does not apply to injury or damage that results from the actual or alleged infringement, or violation of any intellectual property rights or laws, including but not limited to:

1. Copyright;

2. Patent;

3. Trade dress;

4. Trade name;

5. Trade secret; or

6. Trademark

GSG-G-021 0400

Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## MINIMUM PREMIUM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART

The advance premium is the minimum premium for the policy term, unless the first "named insured" or anyone with his, her, its or their power of attorney cancels this policy:

a.  Within the first ninety (90) days of coverage, then the minimum earned premium shall be 25% of the annual premium or $100.00, whichever is greater; or

b.  After the first ninety (90) days of coverage, then the minimum earned premium will be the prorated advance premium or $100, whichever is greater.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

**IFG-G-0039 0501**

**Page 1 of 1**    □

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT – AIRCRAFT, AUTO OR
# WATERCRAFT EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

Exclusion **2. (g.)** Aircraft, Auto or Watercraft is deleted and replaced by the following;

**g.  Aircraft, Auto Or Watercraft**

This insurance does not apply to:

**(1)** "Bodily injury" or "property damage" arising out of any aircraft or watercraft.

**(2)** "Bodily injury" or "property damage" arising out of any "auto".

**(3)** The "loading or unloading" of any aircraft, "auto" or watercraft.

This exclusion applies to "bodily injury" or "property damage" arising out of any aircraft, "auto" or watercraft, whether or not owned, maintained, used, rented, leased, hired, loaned, borrowed or entrusted to others or provided to another by any insured.

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured.

This exclusion does not apply to:

**(a)** A watercraft while ashore on premises you own or rent;

**(b)** A watercraft you do not own that is:

    **(i)** Less than 26 feet long; and

    **(ii)** Not being used to carry persons or property for a charge; or

    **(iii)** Not being used in any speed or racing contest or fishing tournament or any other similar contest or tournament, including preparation or practice for same;

**(c)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured and further provided that you are not in the "auto", trucking, and cartage or livery business or in the business of parking or storing "autos"; or.

**(d)** "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**